## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. <u>22-mj-8533-BER</u>

**IN RE SEALED SEARCH WARRANT**

_____/

### <u>CRIMINAL COVER SHEET</u>

1.  Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    No

2.  Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?    No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY:      ████████████████  _____
        Assistant United States Attorney
        ███████████████████

        99 Northeast 4th Street
        Miami, Florida 33132-2111
        Telephone: ████████████
        E-mail: ███████████████████

**FILED BY** _____**TM**_____ **D.C.**

*Nov 21, 2022*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-mj-8533-BER**

IN RE: SEARCH WARRANT                              **HIGHLY SENSITIVE DOCUMENT**

_____/

## MOTION TO SEAL

The United States of America, by and through the undersigned Assistant United States Attorney, hereby moves to seal this Motion, the Search Warrant, and all its accompanying documents, until further order of this Court. The United States submits that there is good cause because the integrity of the ongoing investigation might be compromised, and evidence might be destroyed.

The United States further requests that, pursuant to this Court's procedures for Highly Sensitive documents, all documents associated with this investigation not be filed on the Court's electronic docket because filing these materials on the electronic docket poses a risk to safety given the sensitive nature of the material contained therein.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY:     ████████████████ _____

████████████████
Assistant United States Attorney

████████████████

99 Northeast 4th Street
Miami, Florida 33132-2111

████████████████

FILED BY____TM____D.C.

Nov 21, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-mj-8533-BER**

**IN RE: SEARCH WARRANT**

**HIGHLY SENSITIVE DOCUMENT**

_____/

**SEALING ORDER**

The United States of America, having applied to this Court for an Order sealing the Motion to Seal, the Search Warrant and all its accompanying documents, and this order and the Court finding good cause:

**IT IS HEREBY ORDERED** that the Motion to Seal, the Search Warrant and its accompanying documents, and this Order shall be filed under seal until further order of this Court. However, the United States Attorney's Office and the Federal Bureau of Investigation may obtain copies of any sealed document for purposes of executing the search warrant.

**DONE AND ORDERED** in chambers at West Palm Beach, Florida, this _21_ day of November 2022

_____
HON. BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

FILED BY_____ *TM*____D.C.

**Nov 21, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE:  SEALED SEARCH WARRANT | Case No. 22-mj-8533-BER |
| | **Filed Under Seal** |

## APPLICATION FOR ORDER COMMANDING MICROSOFT CORPORATION NOT TO NOTIFY ANY PERSON OF THE EXISTENCE OF SEARCH WARRANT

The United States respectfully requests that the Court order Microsoft Corporation not to notify any person (including the subscribers or customers of the account listed in the search warrant) of the existence of the attached search warrant until further order of the Court.

Microsoft is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computer service, as defined in 18 U.S.C. § 2711(2).  Pursuant to 18 U.S.C. § 2703, the United States obtained the attached search warrant, which requires Microsoft to disclose certain records and information to the United States.  This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order."  *Id.*

In this case, such an order would be appropriate because the attached search warrant relates to aspects of an ongoing criminal investigation that are neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation.  Accordingly, there is reason to believe that notification of the existence of the attached search warrant will seriously jeopardize the investigation, by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates.  *See* 18 U.S.C. § 2705(b)(2), (3), (5).  Some of the evidence in this

investigation is stored electronically.  If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal or business computers.

WHEREFORE, the United States respectfully requests that the Court grant the attached Order directing Microsoft not to disclose the existence or content of the attached search warrant, except that Microsoft may disclose the attached search warrant to an attorney for Microsoft, for the purpose of receiving legal advice.

The United States further requests that the Court order that this application and any resulting order be sealed for a period of one year.  As explained above, these documents discuss aspects of an ongoing criminal investigation that are neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Executed on November 21, 2022.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:  ████████████████████
     ████████████████
     Assistant United States Attorney
     ████████████████
     99 Northeast 4th Street
     Miami, Florida 33132-2111
     ████████████████

2

FILED BY_____TM____D.C.

Nov 21, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE:  SEALED SEARCH WARRANT

Case No. 22-mj-8533-BER

**Filed Under Seal**

### ORDER

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b), requesting that the Court issue an Order commanding Microsoft, Inc., an electronic communications service provider and/or a remote computing service, not to notify any person (including the subscribers or customers of the account listed in the search warrant) of the existence of the attached search warrant until further order of the Court.

The Court determines that there is reason to believe that notification of the existence of the attached search warrant will seriously jeopardize the investigation, by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates.  *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Microsoft shall not disclose the existence of the attached search warrant, or this Order of the Court, to the listed subscriber or to any other person, for a period of one year, except that Microsoft may disclose the attached search warrant to an attorney for Microsoft, for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

11/21/22
Date

HON. BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information Associated with ▮▮▮▮▮▮▮▮▮▮ ,<br>Stored at Premises Controlled by Microsoft Corporation | )<br>)<br>)<br>)<br>)     Case No. 22-mj-8533-BER |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

**FILED BY** ___ *TM* ___ D.C.

**Nov 21, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. – West Palm Beach

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 793(e) | Willful retention of national defense information |
| 18 U.S.C. § 2071 | Concealment or removal of government records |
| 18 U.S.C. § 1519 | Obstruction of federal investigation |
| 18 U.S.C. § 1001 | Material false statements |
| 18 U.S.C. § 1623 | Perjury |

The application is based on these facts:

See attached Affidavit of FBI Special Agent ▮▮▮▮▮▮▮▮

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ *nature*

Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Phone (WhatsApp) _____ *(specify reliable electronic means).*

Date: _____ 11/21/2022 _____

*Judge's signature*

City and state: _____ West Palm Beach, Florida _____

Hon. Bruce E. Reinhart, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, ███████████, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with Microsoft enterprise email account ██████████████ ("TARGET ACCOUNT"). The TARGET ACCOUNT is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation (hereinafter "Microsoft"), an electronic communications service provider and/or remote computing service company located at 1 Microsoft Way, Redmond, Washington 98052. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Microsoft to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") ██████  ████████████████████████████████████████████████ During this time, I have received training at the FBI Academy located at Quantico, Virginia, specific to counterintelligence and espionage investigations. ███████████████████████ ███████████████████████ Based on my experience and training, I am familiar with efforts used to unlawfully collect, retain, and disseminate sensitive government information, including classified National Defense Information ("NDI"), and with efforts to obstruct justice.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that stored electronic data associated with the TARGET ACCOUNT, as described in Attachment A, contains evidence of violations of 18 U.S.C. § 793(e) (willful retention of national defense information);   18 U.S.C. § 2071 (concealment or removal of government records); 18 U.S.C § 1519 (obstruction of federal investigation), 18 U.S.C. § 1001 (material false statement); or 18 U.S.C. § 1623 (perjury), as further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### Background on Investigation

6.     The FBI is investigating potential violations of 18 U.S.C. §§ 793(e), 2071, 1519, 1001, and 1623 related to the improper removal and storage of classified national defense information in unauthorized spaces, as well as the unlawful concealment or removal of government records and obstruction of its investigation.

7.     This investigation began as a result of a referral that the United States National Archives and Records Administration ("NARA") sent to the United States Department of Justice

2

("DOJ") on or about February 9, 2022 (hereinafter, the "NARA Referral"). The NARA Referral stated that on January 18, 2022, in accordance with the Presidential Records Act ("PRA"), NARA received from the office of former President Donald J. Trump (hereinafter "FPOTUS"), via representatives, fifteen (15) boxes of records (hereinafter, the "FIFTEEN BOXES"). The FIFTEEN BOXES, which had been transported from a property owned by FPOTUS at 1100 S. Ocean Blvd., Palm Beach, Florida, a residence and club known as "Mar-a-Lago," were reported in the NARA Referral to contain, among other things, highly classified documents intermingled with other records.

8. After an initial review of the NARA Referral, the FBI opened a criminal investigation to, among other things, identify any person(s) who may have removed or retained classified information without authorization and/or in an unauthorized space. The FBI's investigation established that documents bearing classification markings, which appear to contain NDI, were among the materials contained in the FIFTEEN BOXES and were stored at Mar-a-Lago in an unauthorized location.

9. As further described below, on May 11, 2022, the Department of Justice ("DOJ") served a grand jury subpoena on counsel for the Office of the Former President (the "Office") seeking "any and all documents . . . bearing classification markings" in FPOTUS's and/or the Office's possession. On June 3, 2022, FPOTUS's counsel provided DOJ with a package of 37 documents bearing classification markings at the Confidential, Secret, and Top Secret levels. Counsel for FPOTUS provided DOJ with a written certification, signed by another person who was acting as the custodian of records on behalf of the Office for purposes of the subpoena, indicating that "a diligent search was conducted," that the "search was conducted after receipt of the subpoena, in order to locate any and all documents that are responsive to the subpoena" seeking

all documents with classification markings in the custody or control of FPOTUS and/or the Office, and that "any and all responsive documents" were being provided. Counsel for FPOTUS indicated that all responsive documents had been located in one storage room located on the ground floor at Mar-a-Lago (hereinafter, "the storage room.").

10.     After developing additional evidence that the June 3 production did not contain all of the documents with classification markings located at Mar-a-Lago, on August 8, 2022, the FBI executed a search and seizure warrant issued by a Magistrate Judge of the U.S. District Court for the Southern District of Florida. During the search, the FBI recovered from the storage room as well as FPOTUS's office at Mar-a-Lago over 100 documents bearing classification markings, which had not been produced on June 3. The documents appeared to contain NDI. The search also yielded apparent government and/or Presidential records subject to the Presidential Records Act, 44 U.S.C. § 2201.

### *Background on NAUTA*

11.     NAUTA began his career in the U.S. Navy ███████████████████████
█████████████████████████████████ NAUTA transitioned to work as a valet, or personal aide, for FPOTUS during FPOTUS's Presidential Administration (hereinafter "Administration"). ██████████████████████████████████
█████████████████████████ In or around the summer of 2021, NAUTA retired from the military and went to work as a civilian for FPOTUS as his "body man" or assistant. According to publicly available information filed with the Federal Election Commission, the Save America PAC, a political action committee created by FPOTUS, paid NAUTA $149,167 between August 26, 2021, and August 30, 2022, which included $6,375 in "advance consulting" fees.

12.     NAUTA was involved in at least two key movements of FPOTUS's boxes at Mar-a-Lago: (1) in the weeks leading up to the provision of the FIFTEEN BOXES to NARA in January 2022, NAUTA and two other FPOTUS employees brought, at FPOTUS's request, the FIFTEEN BOXES from their location in a storage room at Mar-a-Lago to FPOTUS's residential entryway at Mar-a-Lago for FPOTUS's review; and (2) in the week before FPOTUS's representatives claimed on June 3 that they had conducted a diligent search for classified documents, NAUTA moved approximately 64 boxes out of the storage room at Mar-a-Lago and returned only about 25-30 prior to the review of the storage room for records responsive to the May 11 subpoena. ██

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

13.     ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

14.     ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

15. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████



16. ███████████████████████████████

████████████████████████████████████

███████████████████

17. ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████ The door to the storage room was painted gold and had no other markings on

it.

18.     In addition to the approximately eighty-five to ninety-five FPOTUS BOXES

located in the storage room, there were also other boxes in the storage room with merchandise

such as challenge coins, garment bags, memorabilia from Mar-a-Lago such as photograph frames,

and other décor items.

*Provision of the Fifteen Boxes to NARA*

19.     Over the course of 2021, NARA endeavored to obtain what appeared to be missing

records subject to the Presidential Records Act (PRA), 44 U.S.C. § 2201. On or about May 6, 2021,

NARA made a request for the missing PRA records and continued to make requests until

approximately late December 2021, when NARA was informed twelve boxes were found and

ready for retrieval at Mar-a-Lago. ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

20.     █████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████

21.     ████████████ took a photograph of the storage room and provided it to FPOTUS

sometime between January 1-17, 2022, to show FPOTUS the number of boxes that were in the

storage room. The storage photo, which appears below ███████████████████

███████████ captures approximately sixty-one of the FPOTUS BOXES located in the storage

room:



22.   ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

23.   ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

24. 

25.

26.

27.

28.    From May 16-18, 2022, FBI agents conducted a preliminary review of the FIFTEEN BOXES provided to NARA and identified over 100 documents with classification

markings in fourteen of the FIFTEEN BOXES. Several of the documents also contained what appears to be FPOTUS's handwritten notes.

### *Grand Jury Subpoena, Related Correspondence, and Production of Additional Classified Documents*

29.     On May 11, 2022, an attorney representing FPOTUS, "FPOTUS COUNSEL 1," agreed to accept service of a grand jury subpoena requesting "[a]ny and all documents or writings in the custody or control of Donald J. Trump and/or the Office of Donald J. Trump bearing classification markings." The return date of the subpoena was May 24, 2022.

30.     After an extension was granted for compliance with the subpoena, on the evening of June 2, 2022, FPOTUS COUNSEL 1 contacted DOJ COUNSEL and requested that FBI agents meet him the following day to pick up responsive documents. On June 3, 2022, three FBI agents and DOJ COUNSEL arrived at Mar-a-Lago to accept receipt of the materials. In addition to FPOTUS COUNSEL 1, another individual, hereinafter "INDIVIDUAL 2," was also present as the custodian of records for FPOTUS's post-presidential office. The production included a single Redweld envelope, wrapped in tape, containing documents. FPOTUS COUNSEL 1 relayed that the documents in the Redweld envelope were found during a review of the boxes located in the storage room. INDIVIDUAL 2 provided a Certification Letter, signed by INDIVIDUAL 2, which stated the following:

> Based upon the information that has been provided to me, I am authorized to certify, on behalf of the Office of Donald J. Trump, the following: a. A diligent search was conducted of the boxes that were moved from the White House to Florida; b. This search was conducted after receipt of the subpoena, in order to locate any and all documents that are responsive to the subpoena; c. Any and all responsive documents accompany this certification; and d. No copy, written notation, or reproduction of any kind was retained as to any responsive document.

31.     During receipt of the production, FPOTUS COUNSEL 1 stated he was advised all the records that came from the White House were stored in the storage room at Mar-a-Lago and the boxes of records in the storage room were "the remaining repository" of records from the White House. FPOTUS COUNSEL 1 further stated he was not advised there were any records in any private office space or other location in Mar-a-Lago. The agents and DOJ COUNSEL were permitted to see the storage room (although they were not permitted to look inside the boxes) and observed that approximately fifty to fifty-five boxes remained in the storage room. Considering that only FIFTEEN BOXES had been provided to NARA of the approximately eighty-five to ninety-five FPOTUS BOXES that had been located in the storage room, it appeared that approximately fifteen to thirty of the FPOTUS BOXES had previously been relocated elsewhere. The FBI agents also observed that the composition of boxes differed such that fewer Bankers boxes were visible, while more plain cardboard boxes and storage bins were present. Other items were also present in the storage room, including a coat rack with suit jackets, as well as interior décor items such as wall art and frames.

32.     ███████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████

33.     A review of the documents contained in the Redweld envelope produced pursuant to the grand jury subpoena revealed 37 unique documents bearing classification markings, some of which bore classification markings at the highest levels. Based on my training and experience, I know that documents classified at these levels typically contain NDI. Multiple documents also contained what appears to be FPOTUS's handwritten notes.

34.     When producing the documents, neither FPOTUS COUNSEL 1 nor INDIVIDUAL 2 asserted that FPOTUS had declassified the documents.[1] The documents being in a Redweld envelope wrapped in tape appears to be consistent with an effort to handle the documents as if they were still classified.[2]

### Surveillance Camera Footage Shows NAUTA removing boxes from the Storage Room Area Prior to FPOTUS Counsel 1's Review in Connection with the Subpoena

35.     On July 6, 2022, in response to a grand jury subpoena for surveillance video from internal cameras located on the ground floor (basement) ███████████████████, representatives of the Trump Organization provided a hard drive to FBI agents. Upon review of the hard drive, the FBI determined that the drive contained video footage from four cameras in the basement hallway of Mar-a-Lago in which the door to the storage room is located. The footage on the drive begins on April 23, 2022, and ends on June 24, 2022. The recording feature of the cameras appears to be motion activated, so that footage is only captured when motion is detected within each camera's field of view.

---

[1] 18 U.S.C. § 793(e) does not use the term "classified information," but rather criminalizes the unlawful retention of "information relating to the national defense." The statute does not define "information related to the national defense," but courts have construed it broadly. *See Gorin v. United States*, 312 U.S. 19, 28 (1941) (holding that the phrase "information relating to the national defense" as used in the Espionage Act is a "generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness"). In addition, the information must be "closely held" by the U.S. government. *See United States v. Squillacote*, 221 F.3d 542, 579 (4th Cir. 2000) ("[I]nformation made public by the government as well as information never protected by the government is not national defense information."); *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988). Certain courts have also held that the disclosure of the documents must be potentially damaging to the United States. *See Morison*, 844 F.2d at 1071-72.

[2] On May 25, 2022, while negotiating for an extension of the subpoena, FPOTUS COUNSEL 1 sent two letters to DOJ COUNSEL. In the second such letter, available at 22-mj-8332-BER (D.E. 125), FPOTUS COUNSEL 1 asked DOJ to consider a few "principles," which include FPOTUS COUNSEL 1's claim that a President has absolute authority to declassify documents. In this letter, FPOTUS COUNSEL 1 requested, among other things, that "DOJ provide this letter to any judicial officer who is asked to rule on any motion pertaining to this investigation, or on any application made in connection with any investigative request concerning this investigation."

36.     One camera in particular, identified on the hard drive as "South Tunnel Liquor," provides a view of entry and exit into a room (hereafter anteroom) that leads to the storage room. The doorway to the anteroom itself is not visible in the camera view, as a refrigerator is directly between the camera and doorway, but the footage from this camera nonetheless establishes entry and exit to the anteroom because it is apparent when persons within the camera's field of view turn directly behind the refrigerator and then disappear from view. The anteroom, in addition to its entrance from the South Tunnel, has approximately four doors leading off it, one of which is the gold-painted door that leads to the storage room. The anteroom provides the only entrance to the storage room; however, other offices can also be entered from the anteroom, so it might be possible for persons to enter the storage room from those other offices without being visible in the surveillance camera footage.

37.     By reviewing the camera footage provided by the Trump Organization in response to the subpoena, the FBI has determined the following:

On May 24, 2022, NAUTA is observed exiting the anteroom doorway with three boxes.

On May 30, 2022, four days after NAUTA's interview with the FBI during which the location of boxes was a significant subject of questioning, NAUTA is observed exiting the anteroom doorway with approximately fifty Bankers boxes, consistent with the description of the FPOTUS BOXES. FBI did not observe this quantity of boxes being returned to the storage room through the anteroom entrance in its review of the footage.

On June 1, 2022, NAUTA is observed carrying eleven brown cardboard boxes out the anteroom entrance. One box did not have a lid on it and appeared to contain papers.

The day after that, on June 2, 2022, NAUTA is observed moving twenty-five to thirty boxes, some of which were brown cardboard boxes and others of which were Bankers boxes consistent with the description of the FPOTUS BOXES, into the entrance of the ANTEROOM. Approximately three and a half hours later, NAUTA is observed escorting FPOTUS COUNSEL 1 in through the entrance of the anteroom, and FPOTUS COUNSEL 1 is not observed leaving until approximately two and a half hours later.

On June 3, 2022, FPOTUS COUNSEL 1 is escorted through the anteroom entrance by an unidentified individual wearing a jacket with "USSS POLICE" printed on the back. The unidentified individual and FPOTUS COUNSEL 1 exit the ANTEROOM entrance moments later. FPOTUS COUNSEL 1 appeared to be carrying a Redweld envelope after exiting the anteroom.

38.     According to FBI's review of video footage, and as detailed in the paragraph above, NAUTA can be observed removing approximately 64 boxes from the storage room area between May 24 and June 1, 2022, but only returning 25-30 boxes to the storage room area on June 2, 2022. Notably, and as described above in paragraph 28, these boxes were removed following service of a grand jury subpoena but before FPOTUS COUNSEL 1's review of boxes in the storage room area to locate documents responsive to the subpoena.

39.



***NAUTA concealed information during his FBI interview***

40.     On May 26, 2022, the FBI interviewed NAUTA and explained that the FBI was conducting an investigation as to whether classified documents were stored at Mar-a-Lago and that the FBI was particularly interested in where the boxes with classified documents were located and whether they had been moved outside the storage room.

41.     During the interview, NAUTA claimed that the first time NAUTA saw the boxes was when NAUTA moved them from Pine Hall, the anteroom to FPOTUS's personal residential suite, to the moving truck to provide the boxes to NARA.

14

███████████████████████████████████████████████

████████████████████████████  Further, in NAUTA's interview with the FBI on May

26, he had stated that he did not know where the boxes had come from prior to being located in

Pine Hall. █████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

42.  ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

43.  ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

15

███████████████████████████████████████████████

████████████████████████████████████

***Execution of Search Warrant at Mar-a-Lago and Movement of Boxes After June 3***

44.     On August 8, 2022, the FBI executed a search warrant at Mar-a-Lago authorized by the Honorable Bruce E. Reinhart, U.S. Magistrate Judge in the Southern District of Florida. *See* 22-mj-83332-BER.    The search yielded over 100 unique documents bearing classification markings, with some indicating the highest levels of classification and extremely limited distribution, found in both the storage room and FPOTUS's office at Mar-a-Lago. Based on my training and experience, I know that documents classified at these levels typically contain NDI.

45.     ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

46.     ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

47. ██████████████████████████████████████████

████████████████████████████████████████

### *The TARGET ACCOUNT*

48.    Microsoft records confirmed that the TARGET ACCOUNT is hosted by Microsoft

as an enterprise account, ████████████████████████████████. The

TARGET ACCOUNT mailbox was created on August 15, 2021. A preservation letter was sent to

Microsoft on or about November 8, 2022, for the TARGET ACCOUNT ███████████

███████████

49.    ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

50.    ██████████████████████████████████████████

████████████████████████████████████████████

████████████████ ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████ Therefore, it is likely that relevant emails that ██████ sent or

received from ████████████████ email account are stored on the TARGET ACCOUNT.

17

51.     Based upon this investigation, I believe that there may be stored communications within the TARGET ACCOUNT that contain evidence detailing the removal of FPOTUS boxes, which likely contained classified information and NDI, from the White House to Mar-a-Lago and from the storage room at Mar-a-Lago. Furthermore, I believe there may be stored communications in the TARGET ACCOUNT detailing efforts to mislead law enforcement. Finally, the data from the TARGET ACCOUNT may also provide information ████████████████ that could indicate when and where █ moved boxes, such as if █ moved the boxes to a storage facility or other location outside of Mar-a-Lago.

18

## TECHNICAL INFORMATION REGARDING MICROSOFT

52.     Microsoft offers email services to the public.  In particular, Microsoft allows subscribers to maintain email accounts under a variety of domain names.  A subscriber using Microsoft's services can access his or her email account from any computer connected to the Internet.

53.     Microsoft maintains the following records and information with respect to every subscriber account:

a.    *Email contents*.  In general, any email (which can include attachments such as documents, images, and videos) sent to or from a subscriber's account, or stored in draft form in the account, is maintained on Microsoft's servers unless and until the subscriber deletes the email.  If the subscriber does not delete the email, it can remain on Microsoft's computers indefinitely.  Even if the subscriber deletes the email, it may continue to be available on Microsoft's servers for a certain period of time.

b.    *Subscriber and billing information.*  Microsoft collects and maintains (typically unverified) identifying information about each subscriber, including, for example, name, username, address, telephone number, and alternate email addresses. Microsoft also maintains records concerning the date on which the account was created, the Internet protocol ("IP") address of the user at the time of account creation, the current status of the account (*e.g.*, active or closed), the length of service, and the types of services utilized by the subscriber.  Additionally, for paying subscribers, Microsoft maintains records of the subscriber's means and source of payment, including any credit card or bank account number.

c.    *Transactional information.*  Microsoft also typically retains certain transactional

19

information about the use of each account on its system.  This information can include records of login (*i.e.*, session) times and durations and the methods used to connect to the account.  Microsoft also retains information regarding accounts registered from the same IP address.

      d.  *Customer correspondence.*  Microsoft also typically maintains records of any customer service contacts with or about the subscriber, including any inquiries or complaints concerning the subscriber's account.

      e.  *Preserved and backup records.*  Microsoft also maintains preserved copies of the foregoing categories of records with respect to an account, for at least 90 days, upon receiving a preservation request from the Government pursuant to 18 U.S.C. § 2703(f).  Microsoft may also maintain backup copies of the foregoing categories of records pursuant to its own data retention policy.

      54.    In my training and experience, evidence of who was using an account, and from where, and evidence related to criminal activity of the kind described below, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.  The stored communications and files connected to an account may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

      55.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Microsoft can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a

search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crimes under investigation.

56.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

57.    Other information connected to a Microsoft account may lead to the discovery of additional evidence.  For example, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

58.    Therefore, Microsoft's servers are likely to contain stored electronic communications and information concerning subscribers and their use of the services those companies provide.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

59.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Microsoft to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### REQUEST FOR NON-DISCLOSURE AND SEALING

60.     The United States request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss aspects of an ongoing criminal investigation that are neither public nor known to the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

61.     The United States further requests that pursuant to the preclusion of notice provisions of 18 U.S.C. § 2705(b), Microsoft be ordered not to notify any person (including the subscriber or customer to which the materials relate) of the existence of this warrant for a period of one year.  The United States submits that such an order is justified because notification of the existence of this Order would seriously jeopardize the ongoing investigation. Such a disclosure would give the subscribers an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from prosecution.

## FILTER PROCEDURES

62.　████████ has been represented by attorneys in this matter since at least in or around ████████. A Filter Team will review seized communications and segregate potentially protected materials, i.e., communications that are to/from an attorney, or that otherwise reference or reflect attorney advice. The Filter Team will have no future involvement in the investigation of this matter. At no time will the Filter Team advise the Prosecution Team of the substance of any of the potentially protected materials. The Filter Team then will provide all communications that are not potentially protected materials to the Prosecution Team and the Prosecution Team may resume its review. If at any time the government identifies seized materials that are potentially attorney-client privileged or subject to the work product doctrine ("protected materials"), the Prosecution Team will discontinue review until a Filter Team of government attorneys and agents can review the potentially privileged documents. If the Filter Team concludes that any of the potentially protected materials are not protected (e.g., the communication includes a third party or the crime-fraud exception applies), the Filter Team must obtain either agreement from defense counsel for the privilege holder or a court order before providing these potentially protected materials to the Prosecution Team. If possible, government attorneys will engage with the privilege holder to resolve privilege determinations before proceeding to court for judicial review.

## CONCLUSION

63.　Based on the forgoing, I request that the Court issue the proposed search warrant.

64.　Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

65.     The government will execute this warrant by serving the warrant on Microsoft. Because the warrant will be served on Microsoft, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (WhatsApp) this _____ day of November, 2022

HON. BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

24

## <u>ATTACHMENT A</u>

**Property to Be Searched**

This warrant applies to information associated with Microsoft enterprise email account

█████████████████ ("TARGET ACCOUNT") that is stored at premises owned, maintained,

controlled, or operated by Microsoft Corporation, an electronic communications service provider

and/or remote computing service company located at 1 Microsoft Way, Redmond, Washington

98052.

## <u>ATTACHMENT B</u>

### Particular Things to be Seized

**I.      Information to be disclosed by Microsoft Corporation**

To the extent that the information described in Attachment A is within the possession, custody, or control of Microsoft, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Microsoft, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Microsoft is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A**:**

     A.   The content of all communications sent to or from the account stored in draft form in the account, or otherwise associated with the account, including all message content, attachments, and header information;

     B.   All address book, contact list, or similar information associated with the account;

     C.   Full search history and browser history associated with the account;

     D.   All content in stored drive space associated with the account;

     E.   All bookmarks maintained by the account;

     F.   All services used by the account;

     G.   All subscriber and payment information, including full name, e-mail address (including any secondary or recovery email addresses), physical address (including city, state, and zip code), date of birth, telephone number, websites, screen names, user identification numbers, security questions and answers, registration IP address, payment history, and other personal identifiers;

2

H.   All past and current usernames, account passwords, and names associated with the account;

I.   The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

J.   All transactional records associated with the account, including any IP logs or other records of session times and durations;

K.   Any information identifying the device or devices used to access the account, including a device serial number, a GUID or Global Unique Identifier, Android ID, a phone number, serial numbers, MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"), and any other information regarding the types of devices used to access the account;

L.   All activity logs for the account;

M.   All photos and videos uploaded to the account;

N.   All photos and videos uploaded by any user that have that user tagged in them;

O.   All location and maps information;

P.   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

Q.   All privacy settings and other account settings, including email addresses or other accounts that the account has blocked;

3

R. <u>Advertising and Device Data:</u>  All advertising data relating to the account, including, but not limited to, advertising cookies, information regarding unique advertising IDs associated with the user, any devices used to access the account, Android IDs, application IDs, UDIDs, payment information (including, but not limited to, full credit card numbers and expiration dates and PayPal accounts), ads clicked, and ads created;

S. <u>Linked Accounts:</u>  All accounts linked to the Target Account (including where linked by machine cookie or other cookie, creation or login IP address, recovery email or phone number, AOL account ID, Android ID, Google ID, SMS, Apple ID, or otherwise);

T. For accounts linked by cookie, the date(s) on which they shared a cookie;

U. For accounts linked by SMS number, information regarding whether the numbers were verified; and

V. <u>Customer Correspondence:</u>  All records pertaining to communications between the Service Provider and any person regarding the user or the user's account with the Service Provider, including contacts with support services, records of actions taken, and investigative or user complaints concerning the subscriber.

Microsoft is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes contraband, fruits, evidence, and/or instrumentalities of violations of 18 U.S.C. § 793 (willful retention of national defense information); 18 U.S.C. § 2071 (concealment or removal of government records); 18 U.S.C. § 1519 (obstruction of federal investigation); 18 U.S.C. § 1001 (material false statement); or 18

4

U.S.C. § 1623 (perjury) ████████████████████████████, since January 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Communications, records, documents, and other files regarding the access to or movement or location of any boxes or records;

(b) Information, including communications in any form, regarding the retrieval, storage, or transmission of national defense information or classified material;

(c) Information, including communications in any form, regarding any government and/or Presidential records created between January 20, 2017, and January 20, 2021;

(d) Any evidence of the knowing alteration, destruction, or concealment of any government and/or Presidential records, or of any documents with classification markings;

(e) Communications, records, documents, and other files regarding the source and nature of any monetary transactions;

(f) Evidence indicating how and when the account was accessed or used to determine the context of account access, use, and events relating to the crimes under investigation and to the account owner;

(g) Evidence establishing the motive, capability, or willingness to commit the above-referenced crimes, including but not limited to evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(h) The identity of the person(s) who communicated with the account user about matters relating to violations of the above-referenced crimes, including records that help reveal their whereabouts.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.    22-mj-8533-BER |
| Information associated with ████████████, | ) |
| Stored at Premises Controlled by Microsoft Corporation | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Western_____ District of _____Washington_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____December 5, 2022_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Duty Magistrate_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   *11/21/22     14:27*                    *Bruce Reinhart*
                                                                              *Judge's signature*

City and state:      West Palm Beach, FL                      Hon. Bruce E. Reinhart, U.S. Magistrate Judge
                                                                              *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  22-mj-8533-BER | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:  _____                    _____
                                                                      *Executing officer's signature*

                                                                      _____
                                                                      *Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Microsoft enterprise email account

███████████████ ("TARGET ACCOUNT") that is stored at premises owned, maintained,

controlled, or operated by Microsoft Corporation, an electronic communications service provider

and/or remote computing service company located at 1 Microsoft Way, Redmond, Washington

98052.

## <u>ATTACHMENT B</u>

**Particular Things to be Seized**

I.    **Information to be disclosed by Microsoft Corporation**

To the extent that the information described in Attachment A is within the possession, custody, or control of Microsoft, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Microsoft, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Microsoft is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A**:**

A. The content of all communications sent to or from the account stored in draft form in the account, or otherwise associated with the account, including all message content, attachments, and header information;

B. All address book, contact list, or similar information associated with the account;

C. Full search history and browser history associated with the account;

D. All content in stored drive space associated with the account;

E. All bookmarks maintained by the account;

F. All services used by the account;

G. All subscriber and payment information, including full name, e-mail address (including any secondary or recovery email addresses), physical address (including city, state, and zip code), date of birth, telephone number, websites, screen names, user identification numbers, security questions and answers, registration IP address, payment history, and other personal identifiers;

2

H. All past and current usernames, account passwords, and names associated with the account;

I. The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

J. All transactional records associated with the account, including any IP logs or other records of session times and durations;

K. Any information identifying the device or devices used to access the account, including a device serial number, a GUID or Global Unique Identifier, Android ID, a phone number, serial numbers, MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"), and any other information regarding the types of devices used to access the account;

L. All activity logs for the account;

M. All photos and videos uploaded to the account;

N. All photos and videos uploaded by any user that have that user tagged in them;

O. All location and maps information;

P. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

Q. All privacy settings and other account settings, including email addresses or other accounts that the account has blocked;

3

R. <u>Advertising and Device Data:</u>  All advertising data relating to the account, including, but not limited to, advertising cookies, information regarding unique advertising IDs associated with the user, any devices used to access the account, Android IDs, application IDs, UDIDs, payment information (including, but not limited to, full credit card numbers and expiration dates and PayPal accounts), ads clicked, and ads created;

S. <u>Linked Accounts:</u>  All accounts linked to the Target Account (including where linked by machine cookie or other cookie, creation or login IP address, recovery email or phone number, AOL account ID, Android ID, Google ID, SMS, Apple ID, or otherwise);

T. For accounts linked by cookie, the date(s) on which they shared a cookie;

U. For accounts linked by SMS number, information regarding whether the numbers were verified; and

V. <u>Customer Correspondence:</u>  All records pertaining to communications between the Service Provider and any person regarding the user or the user's account with the Service Provider, including contacts with support services, records of actions taken, and investigative or user complaints concerning the subscriber.

Microsoft is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes contraband, fruits, evidence, and/or instrumentalities of violations of 18 U.S.C. § 793 (willful retention of national defense information); 18 U.S.C. § 2071 (concealment or removal of government records); 18 U.S.C. § 1519 (obstruction of federal investigation); 18 U.S.C. § 1001 (material false statement); or 18

U.S.C. § 1623 (perjury) ███████████████████████████, since January 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Communications, records, documents, and other files regarding the access to or movement or location of any boxes or records;

(b) Information, including communications in any form, regarding the retrieval, storage, or transmission of national defense information or classified material;

(c) Information, including communications in any form, regarding any government and/or Presidential records created between January 20, 2017, and January 20, 2021;

(d) Any evidence of the knowing alteration, destruction, or concealment of any government and/or Presidential records, or of any documents with classification markings;

(e) Communications, records, documents, and other files regarding the source and nature of any monetary transactions;

(f) Evidence indicating how and when the account was accessed or used to determine the context of account access, use, and events relating to the crimes under investigation and to the account owner;

(g) Evidence establishing the motive, capability, or willingness to commit the above-referenced crimes, including but not limited to evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(h) The identity of the person(s) who communicated with the account user about matters relating to violations of the above-referenced crimes, including records that help reveal their whereabouts.